SANFORD L. MICHELMAN (SBN 179702)
smichelman@mrllp.com
MARC R. JACOBS (SBN 185924)
mjacobs@mrllp.com
ROBERT D. ESTRIN (SBN 260402)
restrin@mrllp.com
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024
Telephone:   (310) 299-5500
Facsimile:    (310) 299-5600

*Attorneys for Plaintiffs* DAN VIGDOR and STEPHEN BRADWAY

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAN VIGDOR, an individual; STEPHEN BRADWAY, an individual,<br><br>Plaintiffs,<br>v.<br><br>ANDREW KARAM, an individual; FASSIL BEFEKADU, an individual; ROCKET STREET VENTURES LLC, a California limited liability company; RKSB GMBH PHILIP RESIBERGER, an unknown entity; ANTHONY SOOHOO AND MARLEE SOOHOO REVOCABLE TRUST, an unknown entity; THREE KINGDOMS CAPITAL PARTNERS, L.P., a Delaware limited partnership; JOHN AND ISABELE KRYSTYNAK 2011 FAMILY TRUST, an unknown entity; ANKUR NAGPAL, an individual; WARREN KONKEL, an individual; ADAM FOROUGHI, an individual; VANDANA SHAH AND PRAFUL SHAH REVOCABLE LIVING TRUST, an unknown entity; RAJAN SHAH, an individual; THE ETERNAL BLISS LIMITED PARTNERSHIP, a California limited partnership; MITUL MAHESH SHAH, an individual; MICHAEL LEVINTHAL IRRA, an unknown entity; KARL JACOB III, an individual; 500 | Case No.: 3:18-cv-04573-LB<br><br>**COMPLAINT FOR:**<br><br>1. **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS**<br>2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>3. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>4. **BREACH OF FIDUCIARY DUTY**<br><br>**[JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT]** |

1

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

STARTUPS, L.P., a Delaware limited partnership; ROSE PARTNERS LLC, an unknown entity; STEPHEN TALARICO, an individual; and DOES 1-50, inclusive,

Defendants.

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

Plaintiffs DAN VIGDOR ("Vigdor") and STEPHEN BRADWAY ("Bradway") (collectively referred to as "Plaintiffs"), allege as follows:

**THE PARTIES**

1. Vigdor is an individual who is a resident of Florida. Vigdor is an investor in Super Lucky Casino, Inc. ("Super Lucky") having invested $100,000 into the company on or about January 25, 2012. In exchange, Vigdor, among other rights, received a Convertible Promissory Note ("Security") (attached as Exhibit A) with rights to convert his Security into shares of Super Lucky stock pursuant to the terms of the Security and a corresponding September 11, 2011 Note Purchase Agreement ("NPA") (attached as Exhibit B).

2. Bradway is an individual who is a resident of North Carolina. Bradway is an investor in Super Lucky, having invested $100,000 into the company on or about January 25, 2012. In exchange, Bradway, among other rights, received a Security (attached as Exhibit C) with rights to convert his Security into shares of Super Lucky stock pursuant to the terms of the Security and NPA.

3. Plaintiffs are informed and believe, and based thereon allege: Defendant Andrew Karam ("Karam") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

4. Plaintiffs are informed and believe, and based thereon allege: Defendant Fassil Befekadu ("Befekadu") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

5. Plaintiffs are informed and believe, and based thereon allege: Defendant Rocket Street Ventures LLC ("Rocket Street") is a California limited liability company with its principle place of business in San Francisco, California, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

6. Plaintiffs are informed and believe, and based thereon allege: Defendant RKSB GmbH Philip Resiberger ("RKSB") is an unknown entity, and invested in Super Lucky receiving a Security

pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

7. Plaintiffs are informed and believe, and based thereon allege: Defendant Anthony Soohoo and Marlee Soohoo Revocable Trust ("Soohoo Trust") is an unknown entity, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

8. Plaintiffs are informed and believe, and based thereon allege: Defendant Three Kingdoms Capital Partners, L.P. ("Three Kingdoms"), is a Delaware limited partnership with its principal place of business in San Francisco, California, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

9. Plaintiffs are informed and believe, and based thereon allege: Defendant John and Isabele Krystynak 2011 Family Trust ("Krystynak Trust") is an unknown entity, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

10. Plaintiffs are informed and believe, and based thereon allege: Defendant Ankur Nagpal ("Nagpal") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

11. Plaintiffs are informed and believe, and based thereon allege: Defendant Warren Konkel ("Konkel") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

12. Plaintiffs are informed and believe, and based thereon allege: Defendant Adam Foroughi ("Foroughi") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

13. Plaintiffs are informed and believe, and based thereon allege: Defendant Vandana Shah and Praful Shah Revocable Living Trust ("Shah Trust") is an unknown entity, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

14. Plaintiffs are informed and believe, and based thereon allege: Defendant Rajan Shah ("R. Shah") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

15. Plaintiffs are informed and believe, and based thereon allege: Defendant The Eternal Bliss Limited Partnership ("Eternal Bliss"), is a California limited partnership with its principal place of business in Bakersfield, California, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

16. Plaintiffs are informed and believe, and based thereon allege: Defendant Mitul Mahesh Shah ("M. Shah") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

17. Plaintiffs are informed and believe, and based thereon allege: Defendant Michael Levinthal IRRA ("Levinthal") is an unknown entity, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

18. Plaintiffs are informed and believe, and based thereon allege: Defendant Karl Jacob III ("Jacob") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

19. Plaintiffs are informed and believe, and based thereon allege: Defendant 500 Startups, L.P. ("500 Startups") is a Delaware limited partnership with its principal place of business in San Francisco, California, and invested in Super Lucky receiving a Security pursuant to the same NPA

which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

20. Plaintiffs are informed and believe, and based thereon allege: Defendant Rose Partners LLC is ("Rose Partners") is an unknown entity, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

21. Plaintiffs are informed and believe, and based thereon allege: Defendant Stephen Talarico ("S. Talarico") resides in a state different than Vigdor and Bradway, and invested in Super Lucky receiving a Security pursuant to the same NPA which Plaintiffs are bound by, which mandates that all Securities are governed by California law and are performed entirely in California.

22. Plaintiffs do not know the true names and capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sue such Defendants by such fictitious names. Plaintiffs will ask leave of the court to amend their complaint when the true names and capacities of such fictitious names of Defendants are ascertained. Plaintiffs are informed and believe and thereon allege that such fictitiously named Defendants are liable to Plaintiffs for the facts and circumstances herein alleged.

23. Plaintiffs are informed and believe and thereupon allege that Does 1 through 50 inclusive, are friends, partners, co-conspirators, business partners, co-investors, and/or agents of each other, and aided and abetted each other in committing the acts complained of herein.

## JURISDICTION AND VENUE

24. Plaintiffs bring their Complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

25. Venue in this District is proper under 28 U.S.C. § 1391. On information and belief, a substantial part of the acts complained of herein has occurred in this District. Super Lucky is a California corporation with its principal place of business at 703 Market Street, Suite 350, San Francisco, California 94103. Further, Plaintiffs are informed and believe that several Defendants reside or have their principal place of business in this District.

///

4
**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

## GENERAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.      Plaintiffs and Defendants Invest in the Start-Up Company Super Lucky.**

26.     On or about August 24, 2011, 12 Gigs, Inc. was incorporated and formed in California by Nicholas Talarico ("Talarico") and Bret Terrill ("Terrill"), as co-founders of 12 Gigs, Inc.  On or about July 18, 2014, 12 Gigs changed its name to Super Lucky Casino, Inc., through a corporate filing with the California Secretary of State.  Hereinafter, 12 Gigs, Inc., now known as Super Lucky Casino, Inc., is referred to as "Super Lucky" or "the Company."

27.     Plaintiffs are informed and believe and based thereon allege that in its infancy, Super Lucky was a fledgling start-up company engaged in, and is still engaging in, the business of developing mobile and Facebook applications for entertainment which simulate the casino and related gaming experience for users.  Super Lucky develops and sells mobile phone apps and games.

28.     In January 2012, Plaintiffs invested hundreds of thousands of dollars into Super Lucky when it was a fledgling start-up company needing funds to get off the ground.  In exchange for Plaintiffs' large investment, Plaintiffs each received a Security conferring onto them a right to convert the investment into shares of Super Lucky stock.  Plaintiffs possessed full control of whether or not to convert.

29.     During Plaintiffs' communications with Super Lucky, Plaintiffs understood that Super Lucky needed to raise funds for its company to help it continue to grow.  Super Lucky was at a critical juncture in its infancy and needed cash fast to help sustain its growth.  It was clear that Plaintiffs were not just investing money as simple loans whereby Plaintiffs would receive a return of interest only; Plaintiffs understood that they were investing and risking large sums of their own money in an unproven company in exchange for the opportunity to become significant shareholders in Super Lucky.  All investors in Super Lucky, including Plaintiffs and Defendants, knew that the purpose and intent of all their investments in Super Lucky were to share in the success and profit of Super Lucky when their Securities converted to shares of equity in Super Lucky.

30.     On January 25, 2012, Plaintiffs invested in Super Lucky in exchange for securities convertible into shares of Super Lucky stock and based on the September 26, 2011 NPA.

    a.  See Vigdor's Security attached hereto as Exhibit A;

    b. See NPA attached hereto as Exhibit B; and

    c. See Bradway's Security attached hereto as Exhibit C.

31. From on or about September 2011 to September 2012, Defendants Karam, Befekadu, Rocket Street, RKSB, Soohoo Trust, Three Kingdoms, Krystynak Trust, Nagpal, Konkel, Foroughi, Shah Trust, R. Shah, Eternal Bliss, M. Shah, Levinthal, Jacob, 500 Startups, Rose Partners, and S. Talarico (collectively "Defendants") invested various amounts of money in Super Lucky, each also receiving convertible Securities governed by the same NPA that Plaintiffs' Securities were governed by.  Hereinafter the term "Securities" refers to each Security that Super Lucky gave to Plaintiffs and Defendants.

32. All of the Securities sold to Plaintiffs and Defendants by Super Lucky were separate agreements pursuant to NPA section 7.8.

33. The fact that *conversion*, not repayment, was the specific intended purpose of all of the Securities is expressly written into Page 1 of the NPA (attached as Exhibit B), which explicitly states:

> WHEREAS, the parties *intend* for the Company to issue in return for the Consideration one or more [Securities] convertible into shares of the Company's Equity Securities.

34. Plaintiffs are informed and believe and thereupon allege that Super Lucky always understood and agreed that the spirit and intent of the deal was that Plaintiffs would be converted.

35. Plaintiffs' investment in Super Lucky, and the Securities they received, were not intended to be simple loans. Rather, the intent was always conversion.

**B. The Securities Do Not Allow Repayment of Plaintiffs' Investment Without Plaintiffs' Consent.**

36. Prepayment of Plaintiffs' investment (i.e., before the Maturity Date) by Super Lucky was not permitted absent Plaintiffs' written consent pursuant to the terms of the Securities and NPA, nor was prepayment permitted after the Maturity Date.

37. As set forth in their Securities and the NPA, the Securities had a Maturity Date of January 25, 2015 (36 months after execution of the Security) per Section 1(h) of the NPA.

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

38. The Maturity Date on both of Plaintiffs' Securities came and went without repayment of the notes by Super Lucky.

39. In order to repay Plaintiffs' Securities *after* the Maturity Date, assuming Plaintiffs also consented to same, Page 1 of the Securities provides that Super Lucky can pay back the Securities *only* upon receipt of a written *demand* from the majority investors to pay back all of the Securities:

> Unless earlier converted into Conversion Shares pursuant to Section 2.2 of that certain Note Purchase Agreement dated September 26, 2011 among the Company, Lender and certain other investors (the "Purchase Agreement"). the principal and accrued interest shall be due and payable by the Company ***on demand* by the Majority [investors] at any time *after the Maturity Date***. (See Exhibits A and C, Page 1)

40. Plaintiffs are informed and believe and based thereon allege that at all times relevant herein, the majority investors, who are the Defendants in this case, never made a ***demand*** to pay back the principal and accrued interest on all of the Securities, as required by Page 1 of the Security after the Maturity Date. Nor did Plaintiffs ever consent (written, verbal, or any other form) to same.

41. Furthermore, to additionally protect investors such as Plaintiffs herein, from detrimental, material, adverse, and/or disproportionate treatment from other investors, Section 7.8 of the NPA, which all Defendants knew about because it was in their own agreements, limits the extent to which a majority of the investors may amend the Securities or NPA, waive any term thereof, or consent to acts against another investor when such amendment, waiver, or consent will materially and adversely affect and disproportionately treat another investor:

> "Nonetheless, any term of this Agreement or the [Securities] may be amended and the observance of any term of this Agreement or the [Securities] may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Company and the Majority [investors]; ***provided, however, that any such amendment, waiver or consent [of the Securities] that materially and adversely treats one or more Lenders in a manner that is disproportionate to such treatment of all other Lenders (i.e., not on a parri passu basis), such amendment or waiver shall also require the written consent of the Lenders disproportionately treated***. This Section 7.8 may not be amended without the written consent of the Company and ***all*** Lenders."

42. Likewise, to further protect the investors like Plaintiffs herein, from detrimental, material, adverse, and/or disproportionate treatment by the other investors, Section 7.9 of the NPA, which all Defendants knew about because it was in their own agreements, further limits the extent to

7
**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

which a majority of the investors may consent or vote to diminish or eliminate the rights of another investor who will be materially and adversely affected and treated disproportionately:

> Each Lender acknowledges that by the operation of Section 7.8 hereof, the Majority [investors] will have the right and power to diminish or eliminate all rights of such Lender under this Agreement and each Note issued to such Lender; *provided, however*, **that any such amendment, waiver or consent that materially and adversely treats one or more Lenders in a manner that is disproportionate to such treatment of all other Lenders (i.e., not on a parri passu basis), such amendment or waiver <u>shall also require the written consent of the Lenders disproportionately treated</u>**."

43. No clause in the Securities or NPA allows for Super Lucky to repay Plaintiffs' investment at any time without Plaintiffs' consent. No clause in the Securities or NPA allows Defendants to vote to amend or modify Plaintiffs' Securities to allow repayment at any time without (1) the written consent of Super Lucky; (2) Plaintiffs' written consent; and (3) the majority of investors' written consent. Defendants knew Plaintiffs', Super Lucky's and the majority investors' written consent was required before modifying Plaintiffs' Securities as explained in the NPA.

**C.  Super Lucky Was in the Process of Converting the Securities of *All* Investors, Including Plaintiffs and Defendants, Into Shares of Equity of Super Lucky.**

44. On information and belief, Plaintiffs allege that starting in or about September 2015, that Super Lucky was in the process of converting all of the investors and note holders into equity.

45. On September 4, 2015, Talarico offered to convert Plaintiffs' Securities to equity.

46. On October 7, 2015, Talarico sent an email to Plaintiffs offering to convert Plaintiffs' Securities to shares of stock.

47. On October 19, 2015, Talarico sent another email to Vigdor saying in part: "I'll be circulating Consent & Election docs to convert to stock later this week.  Thanks."

48. On November 10, 2015, Talarico sent an email to Vigdor titled "Super Lucky Casino – conversion of debt to equity – Vigdor" offering to convert Plaintiffs and all Defendants into common stock, stating in part: "Attached, you'll find a Waiver, Consent & Election agreement to convert to equity or take repayment.  The Shareholder Agreement is also attached.  Please read them carefully and consult with your counsel if you wish."

49. On November 16, 2015, Talarico emailed all investors offering instead to convert all investors including Plaintiffs to Preferred Stock:

> "Hi all.
>
> As you know, we recently sent you all a conversion offer to convert your debt notes into equity. A few of you felt that you should convert to preferred, not to common. When we wrote the docs, we didn't feel that was a necessary addition considering the direction we're going and what our most likely outcomes will be.
>
> That said, we appreciate how supportive of the company many of you have been and we want to support your needs as well, so we're creating a Series Seed and creating a preferred share class. We'll be changing the paperwork to reflect this change.
>
> **WHAT DOES THIS MEAN FOR YOU?**
> 1. [I]f you signed the conversion docs already, apologies, but you'll have to do it again
> 2. [I]f you haven't signed the docs, I canceled them as of Saturday morning
>
> You'll be getting new election paperwork + shareholder agreement to review and sign soon.
>
> Please let me know if you have questions.
>
> Thanks."

50. On November 23, 2015, the Board of Directors of Super Lucky unanimously consented to convert *all* Securities into shares of stock of Super Lucky. In other words, Plaintiffs were in the process of being converted like all of the other investors until Defendants undertook to act as described below, engaging in actions that Defendants did not have to engage in, but voluntarily, knowingly and intentionally elected to engage in to further their own personal and economic interests.

**D. Defendants Wrongfully and Improperly Modified Plaintiffs' Securities Without Plaintiffs' Knowledge or Consent to Induce Super Lucky to Invalidly Kick Plaintiffs Out of Super Lucky for Defendants' Personal Gain.**

51. Although Super Lucky's communications, Board Resolution, and intent made clear that Super Lucky was preparing to convert Plaintiffs' Securities into shares of stock, Defendants interfered to prevent that from happening. Specifically, Defendants worked hand in hand with Super

9
**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

Lucky from on or about October 2015 through about July 2016 to eliminate Plaintiffs from Super Lucky and eradicate Plaintiffs' conversion rights. Secretly and without Plaintiffs' knowledge or consent, Defendants, a majority of investors with the right to vote under the NPA and misusing the terms of the NPA which governed all of their Securities, invalidly voted to modify Plaintiffs' Securities to give Super Lucky the purported indefinite and unlimited option to pay off Plaintiffs' Securities at any time, contrary to the terms of Plaintiffs' NPA and Securities, without notice to or consent of Plaintiffs.

52. During this time, Plaintiffs, unaware of Defendants' actions, sent multiple emails to Talarico and Terrill asking for an update on the status of the conversion of their Securities. Super Lucky ignored Plaintiffs' emails. Plaintiffs did not understand why at the time, but Super Lucky's email history during this period explains why: Defendants were diligently working with Super Lucky to collect enough votes to try to eliminate Plaintiffs' ability to convert their Securities into equity.

53. Defendants engaged in the actions alleged herein above for their own personal gain to cause their own equity interests to accrete in value, to avoid dilution of their equity interest promised by Super Lucky, and/or to curry favor with Super Lucky's founders with the hope that Super Lucky would voluntarily convert them to preferred shares of stock despite that the terms of the NPA only refer to Common Stock and to protect their own interests of avoiding Super Lucky and its founders from attempting to kick them out of the Company as well.

54. Once a majority of the investors, i.e., Defendants herein, secretly and invalidly voted to modify Plaintiffs' Securities without Plaintiffs' or Super Lucky's written consent, or compliance with Sections 7.8 and 7.9 of the NPA, Super Lucky sent each Plaintiff a check for $130,149.27. Plaintiffs never cashed the checks.

55. In early 2017, Super Lucky converted Defendants to preferred shares of stock in Super Lucky. Plaintiffs' Securities were not converted.

56. Plaintiffs are informed and believe that Super Lucky is now valued in excess of $100 million. Plaintiffs' shares of that equity, had they been converted to equity like all the other investors rather than being treated disproportionately different from all of the other investors because of the secret and invalid modification by the Defendants, would be valued at more than $4 million and

Plaintiffs would have received and would be receiving dividends.

57. Defendants knew that the terms of the NPA prohibited them from taking any action to modify or amend Plaintiffs' Securities without Plaintiffs' knowledge and written consent and Super Lucky's written consent. And Defendants knew that Super Lucky was trying to breach their agreements with Plaintiffs, including without limitation, modifying Section 1 and page 1 of the Securities and Sections 7.8 and 7.9 of the NPA. And Defendants knew Super Lucky was trying to kick Plaintiffs out of the company, but needed Defendants' help to do so.

58. Sections 7.8 and 7.9 of the NPA were in all of Defendants' NPAs. Their NPAs were the same as the NPA that Plaintiffs were bound by. Defendants understood that the NPA bound Plaintiffs and Defendants together, and that they each had the potential to vote to impact each other's rights, including Plaintiffs'. As a result, Defendants were obligated to know and understand the provisions of section 7.8 and 7.9 of the NPA. And they had a duty to act fairly and equitably towards Plaintiffs and other investors. But instead, Defendants chose to put their own interests first at the expense and detriment of others, Plaintiffs herein.

59. Defendants knew Super Lucky had no right to modify Plaintiffs' Securities because of the express provisions of Section 7.8, which has three requirements before any modification: (a) written consent of Super Lucky; (b) written consent of the majority investors; and (c) written consent of those investors who would be disproportionally affected by the modification. Three requirements were necessary before modification and Defendants knew they did not satisfy all of the requirements of Section 7.8, but they still undertook a secret vote to amend (purportedly) Plaintiffs' Securities and NPA without Plaintiffs' knowledge or written consent anyway.

60. Defendants knew that Super Lucky wanted to get out of its contractual obligations with Plaintiffs and the only way Super Lucky could do that was through the help of Defendants. Super Lucky informed Defendants that it wanted to kick Plaintiffs out of Super Lucky. Defendants had a duty and obligation to investigate Super Lucky's reasons for trying to kick Plaintiffs out of Super Lucky. Had they done so, Defendants would have learned the truth that Plaintiffs did nothing to deserve Super Lucky's wrongful treatment. Defendants did not have to, and were not required to execute any documents or consent to modify Plaintiffs' Securities and NPA. Instead, Defendants to

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**

do so voluntarily; Defendants decided to further their own personal and economic interests by knowingly and intentionally helping Super Lucky invalidly try to amend its agreement with Plaintiffs when Plaintiffs had no justifiable reason to do so. Simply put, Defendants had no cause, reason, or purpose to secretly and invalidly vote or act in the way that they did to interfere with Plaintiffs' contracts with Super Lucky other than to benefit themselves only.

61. Defendants' wrongful conduct prevented Super Lucky from performing its obligations in the contract it had with Plaintiffs, which required Super Lucky to first obtain written consent of Plaintiffs before repaying Plaintiffs' initial investment in Super Lucky instead of converting Plaintiffs' Securities into shares of stock. Such conduct by Defendants interfered with Plaintiffs' contractual relations with Super Lucky and deprived them of their stock conversion worth millions as well as dividends of Super Lucky.

62. Defendants' wrongful conduct also disrupted the existing and prospective economic relationship between Plaintiffs and Super Lucky.

63. But for Defendants' invalid secret votes and collective actions, Super Lucky would not have sent the checks to Plaintiffs and Plaintiffs would have already been converted into shares of stock. Enabled by the invalid consent and modification votes by Defendants, Super Lucky breached or attempted to breach its contract with Plaintiffs, sending Plaintiffs checks instead of converting Plaintiffs' Securities to preferred shares of stock, saving Super Lucky's founders millions of dollars and causing Defendants' equity to accrete in value and/or allow Plaintiffs to avoid dilution of same.

64. Defendants knew that Plaintiffs had valid contracts with Super Lucky. Defendants were not a party to the NPA and Securities between Plaintiffs and Super Lucky. By signing the invalid consent forms in an attempt to modify Plaintiffs' Securities, Defendants caused Super Lucky to act, to breach its contract with Plaintiffs, and Defendants disrupted Plaintiffs' rights under their contracts with Super Lucky. This conduct by Defendants completely gutted the very purpose of Plaintiffs' initial investments in Super Lucky, which all Defendants benefited from as Plaintiffs' initial investments helped Super Lucky to grow from a start-up company to a company valued in excess of $100 million.

65. Defendants knew or should have known that Plaintiffs had an economic relationship with Super Lucky given that Plaintiffs were one of the earliest and largest investors in Super Lucky. As an early investor, Plaintiffs took a greater risk investing in Super Lucky, which inured to the benefit of all Defendants. Defendants' conduct in secretly and invalidly voting to modify Plaintiffs' Securities to purportedly allow repayment by Super Lucky at any time instead of allowing Plaintiffs the option to convert into shares of equity of Super Lucky was a substantial factor in causing Plaintiffs to lose out on any chance to reap great profit from their initial investments to be converted into preferred shares of stock and to receive dividends. Based on information and belief, Plaintiffs believe that their right to convert to equity under the Securities would have given them millions of dollars' worth of shares in Super Lucky.

66. Defendants also failed to act with reasonable care given that they knew Plaintiffs expected and desired to convert their Securities into shares of equity of Super Lucky. Further, Defendants failed to act with reasonable care by not obtaining Plaintiffs' consent to do what they did.

67. Defendants owed a fiduciary duty to Plaintiffs. From the start, Defendants along with Plaintiffs joined forces by combining their initial investments of capital into Super Lucky to carry out a single mission: help Super Lucky grow and flourish so that Defendants and Plaintiffs could convert their Securities into shares of equity of Super Lucky and all make substantial profits. That was the intent of all investors. Defendants and Plaintiffs had a joint interest, joint purpose, and jointly invested together in Super Lucky pursuant to the same NPA, and understood that they would share in the profits, losses, and dividends upon conversion and reap the benefits of same. Defendants and Plaintiffs shared a fiduciary relationship with each other whereby they understood that their role as investors in Super Lucky and the actions they took in such capacity directly affected each other as investors in Super Lucky, tied together by the NPA.

68. Defendants breached this fiduciary duty when they secretly and invalidly voted to modify Plaintiffs' Securities and NPA in an attempt to strip Plaintiffs of the ability to convert their Securities into shares of stock.

69. Plaintiffs are informed and believe, and based thereon allege, that the Defendants engaged in the above-described conduct to undermine, diminish, or extinguish the value of Plaintiffs'

Securities and/or deceive Plaintiffs with respect to their rights, duties, and obligations under the Securities and NPA contracts, all for their own personal gain, by conspiring with Super Lucky and each other to secretly eliminate Plaintiffs' ownership stake in Super Lucky, although ultimately, Plaintiffs contend these actions were invalid and ineffective to accomplish this improper purpose.

## FIRST CAUSE OF ACTION

### (Intentional Interference with Contractual Relations)

### (By Plaintiffs Against Defendants)

70. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 65 of the Complaint with the same force and effect as if fully set forth at length herein.

71. Plaintiffs and Super Lucky entered into the NPA and Securities attached hereto as Exhibits A, B and C.

72. Defendants knew of the contracts between Plaintiffs and Super Lucky.

73. Defendants were not parties to the contracts between Plaintiffs and Super Lucky.

74. Defendants intentionally interfered with the contracts between Plaintiffs and Super Lucky by secretly and invalidly voting to modify these contracts to allow (purportedly) Super Lucky to repay Plaintiffs' initial investments in Super Lucky at any time without Plaintiffs' consent rather than as specified in the contracts.

75. Defendants intended to disrupt Super Lucky's performance of its obligations under its contract with Plaintiffs or knew that disruption of Super Lucky's performance under its contract with Plaintiffs was certain or substantially certain to occur.

76. Plaintiffs were severely harmed by Defendants' conduct because they were unable to convert their Securities into preferred shares of stock in Super Lucky, which would be valued in the millions of dollars, and have further been deprived of resulting dividends.

77. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

78. Plaintiffs are informed and believe, and thereupon allege that as a direct, foreseeable, proximate and inevitable result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain injury and damages in an amount in excess of this Courts' minimum jurisdiction.

79. Plaintiffs seek punitive damages against Defendants for Defendants' willful and wanton behavior in secretly conspiring and invalidly voting to purportedly eliminate Plaintiffs' investment in Super Lucky. As alleged above, Defendants' conduct was malicious, oppressive, and willful, and Plaintiffs are entitled to punitive damages.

**SECOND CAUSE OF ACTION**

**(Intentional Interference with Prospective Economic Advantage)**

**(By Plaintiffs Against Defendants)**

80. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 75 of the Complaint with the same force and effect as if fully set forth at length herein.

81. Plaintiffs and Super Lucky were in an economic relationship that would have resulted in an economic benefit to Plaintiffs. Plaintiffs and Super Lucky entered into the NPA and Securities attached hereto as Exhibits A, B and C, whereby Plaintiffs invested money into Super Lucky in exchange for Securities that would convert to shares of stock in Super Lucky.

82. Defendants knew or should have known of this economic relationship between Plaintiffs and Super Lucky.

83. Defendants engaged in wrongful conduct by breaching their fiduciary duty which they owed to Plaintiffs as fellow and joint investors in Super Lucky and/or interfering with Plaintiffs contracts with Super Lucky.

84. By engaging in this wrongful conduct and breaching their fiduciary duty to Plaintiffs, Defendants intended to disrupt the economic relationship between Plaintiffs and Super Lucky and/or knew that disruption of the economic relationship was certain or substantially certain to occur.

85. Plaintiffs are informed and believe, and thereupon allege that as a direct, foreseeable, proximate and inevitable result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain injury and damages in an amount in excess of this Courts' minimum jurisdiction.

86. Plaintiffs seek punitive damages against Defendants for Defendants' willful and wanton behavior in secretly conspiring and invalidly voting to purportedly eliminate Plaintiffs'

investment in Super Lucky. As alleged above, Defendants' conduct was malicious, oppressive, and willful, and Plaintiffs are entitled to punitive damages.

## THIRD CAUSE OF ACTION

### (Negligent Interference with Prospective Economic Advantage)

### (By Plaintiffs Against All Defendants)

87. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 82 of the Complaint with the same force and effect as if fully set forth at length herein.

88. Plaintiffs and Super Lucky were in an economic relationship that would have resulted in an economic benefit to Plaintiffs. Plaintiffs and Super Lucky entered into the NPA and Securities attached hereto as Exhibits A, B and C, whereby Plaintiffs invested money into Super Lucky in exchange for Securities that would convert to shares of stock in Super Lucky.

89. Defendants knew or should have known of this economic relationship between Plaintiffs and Super Lucky.

90. Defendants knew or should have known that this economic relationship would be disrupted if they failed to act with reasonable care.

91. Defendants failed to act with reasonable care.

92. Defendants engaged in wrongful conduct by breaching their fiduciary duty which they owed to Plaintiffs as fellow and joint investors in Super Lucky and/or interfering with Plaintiffs' contracts with Super Lucky.

93. By engaging in this wrongful conduct, breaching their fiduciary duty to Plaintiffs, and/or interfering with Plaintiffs' contracts with Super Lucky, Defendants disrupted the economic relationship between Plaintiffs and Super Lucky.

94. Plaintiffs were severely harmed as a result of Defendants' wrongful conduct.

95. Defendants' wrongful conduct was a substantial factor in causing Plaintiffs' harm.

96. Plaintiffs are informed and believe, and thereupon allege that as a direct, foreseeable, proximate and inevitable result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain injury and damages in an amount in excess of this Courts' minimum jurisdiction.

97. Plaintiffs seek punitive damages against Defendants for Defendants' willful and wanton behavior in secretly conspiring and invalidly voting to purportedly eliminate Plaintiffs' investment in Super Lucky. As alleged above, Defendants' conduct was malicious, oppressive, and willful, and Plaintiffs are entitled to punitive damages.

**FOURTH CAUSE OF ACTION**

**(Breach of Fiduciary Duty)**

**(By Plaintiffs Against Defendants)**

98. Plaintiffs hereby reallege and incorporate by reference each and every allegation contained in paragraphs 1 through 93 of the Complaint with the same force and effect as if fully set forth at length herein.

99. Plaintiffs and Defendants joined forces by combining their initial investments of capital to Super Lucky to carry out a single mission: help Super Lucky continue to grow and flourish so that Defendants and Plaintiffs could convert their Securities into shares of equity of Super Lucky, and each of them together could make significant profits. Defendants and Plaintiffs had a joint interest in Super Lucky and understood that through their respective investments in Super Lucky, they would share in the profits, losses, dividends, and equity of Super Lucky.

100. Defendants owed Plaintiffs a fiduciary duty: (a) given their respective roles as joint investors in Super Lucky; and (b) given that all of the Securities were governed by the same NPA and the NPA included voting rights whereby the majority of investors could not act in a manner that benefited only the majority investors and in detriment to the minority investors, Plaintiffs herein.

101. Defendants breached this fiduciary duty when they formed a voting block of majority investors and banded together to attempt to modify Plaintiffs' Securities in an effort to eliminate Plaintiffs' ability to convert their Securities into shares of stock in Super Lucky to enhance the value of their own equity in Super Lucky and to prevent dilution of same.

102. Plaintiffs were severely harmed by Defendants' breach of their fiduciary duty because Plaintiffs were unable to convert their Securities into preferred shares of stock in Super Lucky, which would be valued in the millions of dollars and which would have entitled them to dividends.

103. Plaintiffs are informed and believe, and thereupon allege that as a direct, foreseeable, proximate and inevitable result of Defendants' conduct, Plaintiffs have sustained and will continue to sustain injury and damages in an amount in excess of this Courts' minimum jurisdiction.

104. Plaintiffs seek punitive damages against Defendants for Defendants' willful and wanton behavior in secretly conspiring and invalidly voting to purportedly eliminate Plaintiffs' investment in Super Lucky. As alleged above, Defendants' conduct was malicious, oppressive, and willful, and Plaintiffs are entitled to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves respectfully pray for relief against Defendants as follows:

1. Award compensatory damages to Plaintiffs in an amount to be ascertained at trial;
2. Award Plaintiffs pre-judgment and post-judgment interest to the extent allowable;
3. Award Plaintiffs punitive damages against Defendants for Defendants' willful, malicious, and wanton behavior; and
4. Award such other and further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a jury trial on all issues so triable.

Dated: July 27, 2018                    **MICHELMAN & ROBINSON LLP**

By   */s/ Marc R. Jacobs*                    .
Sanford L. Michelman
Marc R. Jacobs
Robert Estrin
*Attorneys for Plaintiffs*

**COMPLAINT; JURY TRIAL DEMANDED; PUNITIVE DAMAGES SOUGHT**